present the appellant Donald Bill Smith. Smith and Sherman were first convicted in counts one and two, Sherman and Smith, of conspiracy to violate section 1512A1, conspiracy to commit witness tampering. Smith then was also convicted of the substantive count. The first issue to present to the court this morning is whether the evidence was sufficient to prove that what ended up being supervised release revocation and or future indictment. The intent element of the statute is addressed in the Arthur Anderson case and the Aguilar case. To prove the requisite intent to violate this section of witness tampering statute, Arthur Anderson imposes on the government proof of a nexus requirement between the obstructive conduct and an official proceeding. In short, what Arthur Anderson and Aguilar impose is this standard. If the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct. And that, I believe, is at the heart of this case. The question will be, what did Smith know? When did Smith know it? That's the quantum of proof that we're going to have to deal with here. What are the objective facts? The undisputed facts are that Sherman distributed drugs to Susan Cooper, a confidential informant, on five occasions. They were controlled purchases, photographed, witnessed. I believe they were audio recorded. A supervised release revocation petition was then filed against Sherman. And on June 6, 2016, a detention hearing was held in front of one of our magistrate judges, in which case the DTF agent presented the evidence of the five controlled purchases. Susan Cooper, the informant, did not testify. September 23, the revocation petition had been filed. Sherman meets with his attorney, a federal public defender. They discuss the case. Then the attorney discusses the case with the AUSA assigned to the matter. And they begin plea negotiations. Sherman's attorney testifies that at the end of September 23, which is a Friday, that Sherman had concluded he was guilty. He intended to plead guilty to the supervised release revocation. And an offer had been made to resolve the future indictment. It had not been filed yet. According to her, Sherman understood Cooper's testimony was not needed at either one of those proceedings, that he was, in fact, guilty, and that he had previously cooperated and confessed. Let me ask a question just to clarify. As I understand it, there was an offer of seven years' imprisonment made. You said that he had decided to plead guilty. Yes, sir. Did he testify? Is there evidence of that? Did he? Who, Your Honor? Anyone testify that he decided to accept the plea offer? The AUSA said, essentially, in my mind, the case was resolved. A formal plea agreement had not been signed. But the negotiation essentially was complete, as I understood the AUSA's and the Federal Public Defender's testimony. The offer, I understand, was this. Plead guilty to both. The government will recommend the maximum on the supervised release, which is 24 months. That's the first. And what I believe was the mandatory minimum on the future indictment, which is five years, run consecutively for a grand total of seven years. Was the case fully formalized with a written plea agreement at that point? No. Did it appear to me from the evidence that that was the intent of the parties? Yes. And having read and sat through the Federal Public Defender's testimony, she was convinced. Sherman apparently told her, I understand. I'm guilty. Susan Cooper does not need to be a witness. I'm going to plead guilty to the supervised release. But as she testified, the offer is essentially to max Sherman out. Why not just test the proof? I've not seen the transcript of that supervised release hearing. Now, traditionally, they will go, either I didn't do it. I suspect that's not what happened in this case. Or, I admit, but here are mitigating factors, Your Honor. Give me something less than the statutory 24 months. I don't know. That record was not introduced into evidence. But typically, that's the way it goes. And so the objective, the undisputed facts are, there's a detention hearing then on June 6th, 2016. Cooper's testimony is not needed. The evidence is presented. The magistrate judge finds it sufficient, detains Sherman at that point. Back to September 23rd, those discussions are had. Again, Sherman's attorney testifies and is convinced. Sherman's guilty. He knows it. He realizes Cooper's testimony is not needed. Wasn't there also some testimony that he was, Mr. Sherman, was not satisfied with some of the terms and that there was a bit of a stalemate, at least as to some of the, you know, small d demands that Mr. Sherman was making in connection with the negotiation? And Your Honor, that's the way I read the record and heard the testimony. I don't remember that the sticking point was ever identified. I couldn't tell you right now what that sticking point was. I'm assuming it was, more likely than not, his supervised release guideline range was less than the statutory maximum. But whatever that was, I do remember what it was. I think it was, can't you give, you being AUSA, me being the federal public defender, give Sherman a better break for his substantial assistance? A factor that goes into play here in this matrix is that Sherman had cooperated and had provided information to the government. As part of that proffer, he necessarily confessed to the underlying facts. He also knew, and I believe the evidence bears this out, well, it does, the federal public defender testified, and Sherman knew that if we took a position contrary to guilt at the supervised release revocation hearing, his proffered statements would come in. Again, the evidence was overwhelming and substantial. That's what Sherman believed, according to his attorney. You cannot win. Susan Cooper's testimony is not needed. And that goes to the ultimate issue in this case. If her testimony is not needed, then under the standards for this witness tampering statute, Smith's alleged obstructive conduct could not have had an influence on that foreseeable proceeding. Let's say the plea negotiations fell through. I mean, if you conceded they weren't finalized, then her testimony would be needed. I mean, you point out in the early proceedings, the detention and things like that, her testimony wasn't necessary. Well, the reason for that is that hearsay is allowed in those proceedings. But in a trial, it wouldn't be. So wouldn't she be necessary if things went south in the negotiations? I would suggest to Your Honor, not, because the status of the evidence was overwhelming. Cooper was simply not needed. The five transactions were photographed. They were audioed. Eddie Keithley was the drug task force officer. He was an eyewitness to the events. Cooper's testimony was unnecessary. Again, importantly, because Sherman had proffered and had confessed to these things, if he, let's move forward to the indictment trial, if he had disputed guilt, then that evidence would have come in against him. Well, he'd have to dispute guilt by taking the stand and denying it. He could still put the government to its burden. He could still put the government to its burden, but the way these proffer agreements are written, it's a very, very fine line. They say, if you take a position contrary to, and then where do we get that line? Well, the ones I've seen, and I've seen a lot of them, say, if you testify to the contrary, then your proffer comes in. In a debatable point, if I, as the defense attorney, were to stand up in the opening and go, client innocent, government proof, have I taken a position contrary to and become admissible? I personally have not been in that situation, but Me either. Yeah, that's the way that situation works. So our point is, is the focus is going to be, what did Smith know? Now, the government's brief seems to me to read that it's relying on what Sherman knew, and Sherman obviously knew a lot. Again, the undisputed evidence we've been through. We know additionally undisputed evidence that Isn't there evidence that, I guess it was, I get the names mixed up, but Sherman called Smith right after the plea offer was made? Yes, and so the undisputed evidence comes from the phone data, which shows that at the end of Friday, September 23rd, resolved, not resolved plea negotiations, we can say for sure, have occurred, and again, according to the FPD, essentially case over. He's guilty. There are text communications and phone calls, according to the phone data between Sherman's phone and Smith's phone throughout that weekend, and then assuming that she was murdered and not just disappeared, but after she disappeared that morning. It's the lack of the content of those communications that's important. We don't know what they talked about. As I suggest in the brief Let me ask you, you frame it in terms of they could have presented the case without Susan Cooper's testimony based on the pictures and recordings, and all that may be true, but does that necessarily get you to innocence? In other words, couldn't a reasonable jury conclude that Sherman and Smith thought that she was crucial, even though it's possible that the case could have been put on without her? And that's, I think, the debatable subject here, because we don't know the content of those communications. As I suggest in the brief, the natural and probable likelihood of what those conversations were, if they involved Sherman's case, were exactly what happened at the end of the day on Friday. Smith, I'm guilty. Cooper, I'm making this up. Cooper does not need to be dead. They've got me. They've got the goods on me. There's no need to do anything. I'm pleading guilty. The government's trying to take just the first part of it. Smith only knew that there was a revocation hearing pending. He did not know the remainder of the story, that there was futility to do anything to try to obstruct that proceeding. Again, it's the lack of evidence. No offense to my brother representing Sherman, but there does seem to be some evidence on Sherman's behalf of what he knew. I just suggest to the panel that there's little to no evidence of what Smith knew, which I submit is what's required for the nexus requirement under Arthur Anderson and Aguilar. Very well. At this point, I'm out of time. Are there any further questions I'll address? If not, I'll rebut. Hearing none, thank you. Thank you. May it please the court, I'm Jeff Rosenzweig and I represent Sam Sherman. The major issue in this case can be presented, can be summarized as how many times and how many witnesses can the district court say Smith only and deny Sherman a severance. We recognize that the this case, we submit, fits closely, fits like a glove really, within the grounds that a severance should have been granted and that Sam Sherman was prejudiced by the court's failure to do so. There are a number of salient facts of this case and the most salient is there's no dispute that Sam Sherman was nowhere around at the time that Susan Cooper was killed. The government's theory is that Smith killed her and they presented various people for that proposition. But the undisputed evidence is that Sam Sherman was 100 or so miles away at the time of the killing. That's the first thing. You have a different, and they didn't charge him with the substance of the killing. The government repeatedly quoted witnesses to say, quoting witnesses to Smith saying that he had done it essentially for Sherman or for Sherman's benefit. The government didn't even claim that these were alleged co-conspirator statements. These were the reason for the so-called Smith only statement. You said multiple. How many witnesses testified to a statement like that? There were at least three. Porter said in his testimony, why is she dead? She was going to testify against, quote, my uncle, meaning Sherman. Fraser, Jason Kelly Fraser, quoted Smith as saying that she was killed for snitching on Sam Sherman. Paris Davis quoted Smith as saying he felt obligated to do it for Sam. I sort of perceive this as almost like a Bruton type argument. I perceive this almost as a Bruton type argument? Yes. And the key there is does it implicate Smith or Sherman or both? And it seems to me it clearly implicates Smith. And doing it for Sherman doesn't necessarily mean that he's doing it at Sherman's behest. So it doesn't necessarily implicate him. Do you understand what I'm saying? I understand what you're saying. And number one, I think that's a burden you shouldn't place on a lay jury, particularly repeatedly doing so. But also in the context of this case where you had, they had a witness saying that Smith and Sherman were together several weeks earlier, allegedly introducing a threat, and then the phone records that purport to have at least their phones together earlier in the day, this was crucial evidence to put a context in it. The government wanted to put a context in it. But to put the context in, they have to repeatedly present evidence that is inadmissible against Sherman. It was admissible against Smith, but it was inadmissible against Sherman. And under the circumstances, the judge telling the jury, Smith only, Smith only, Smith only, is extremely prejudicial. And I appreciate your argument on how it links Sherman and Smith in a way that the government maybe wasn't able to do as directly with other evidence. What do we do with the jury instructions? It seems to me as I looked through the transcript, this district court just went over the top to try to make sure that the jury understood. And so I guess where's the line drawn between an instruction actually giving it more attention and an instruction actually kind of pounding into their heads the importance of separating these two individuals for purposes of determining their guilt or innocence? Well, Your Honor, first it's a, you know, it's a, it's obviously a somewhat fact-specific inquiry. And our position, and maybe you could do it if there's one witness or some minor thing, but repeatedly over and over and over again with no, with no argument that these were alleged co-conspirator statements. So your position is really there was no jury instruction that could cure this? Because I was, I just thought that Judge Marshall did a pretty good job given what the ruling was to continue to remind the jury. But I'm hearing you say that this is the type of evidence that really, you can't unring this bell for the... That's why we kept on repeating and repeating and being denied on our motion for severance. I mean, these, the jury is obviously a lay jury. They're not, they're not sophisticated in the rules of evidence. And just, and the circumstances here where you have, we have some marked difference in culpability. You've got the whole confrontation issue, which is what, you know, Bruton and everything have to deal with. But the district court, dealing with the confrontation question, said that these statements were non-testimonial. Well... What's your response to that? Well, yes, because obviously we couldn't call Smith, obviously, and challenge him, did you really say that? Or are they lying when they said that? We could not call Smith, which is the whole, you know, that we're unable to confront him under those circumstances. Maybe there's not, maybe it's not Crawford stuff, but it's, but it's, you know, but there's, there's nothing that's, nothing that Sherman could do to try to... Well, if it's not Crawford stuff, then the confrontational, confrontation clause isn't implicated, right? No, no, that's, I mean, Bruton is a confrontation issue. I mean, it's, it's a witness being quoted as saying something that, when, when we cannot challenge the witness. I mean, that's the, that's the major problem. And we recognize that the case law makes it difficult. But as the often, this is one of those cases where the limiting instruction, considering the number of times and the way it was presented, that would fit to the government's theory with testimony that was clearly inadmissible, that's just asking too much of the jury. And, and Sherman is entitled to a trial without the jury repeatedly being told, being told things that were inadmissible against him. And I reserve any time for rebuttal. We don't have any, but I'll give you each a minute in rebuttal. It's an important case. Mr. Dickinson. Thank you. Good morning. May it please the court. Opposing counsel. My name is Bart Dickinson. I represent the Eastern District of Arkansas. In this case, both defendants were convicted of conspiracy to commit the murder. After 11 days and 30 witnesses and hundreds and hundreds of exhibits, the jury determined that both men were guilty of the conspiracy. And of course, Don Smith, the other charges, including the drug charge and actually committing the murder. To address the nexus issue that was raised by Mr. Hendricks in both sides in their brief, the nexus is an issue in this case. I agree with that, but I believe there's sufficient adequate evidence for both parties to be convicted based on a nexus being established to a foreseeable official proceeding. Mr. Appellate talked about the fact that there was a contention hearing, which is a different standard from a supervisory application hearing and also a trial, a but getting a conviction, a finding in a revocation hearing of guilty or also a trial would be much different. And Susan Cooper was to be a necessary witness. Ali Ahmad, who was a USA at the time, testified that she would be an essential necessary witness that he would want to call. And also Latrice Gray testified that she would be a witness. I think that Latrice Gray also testified about Mr. Sherman's state of mind, the fact that they were trying to work out negotiations, but those had fallen through. There was no plea deal. There wasn't even an indictment at the time when Mrs. Cooper was murdered for the drug conspiracy committed by Sam Sherman. So there's certainly, when that broke down, those plea negotiations broke down in September 26th of 2016, you find out that that's when things got in. Mr. Hendricks suggested that the plea was basically a done deal. You just said it had broken down. What's the evidence that it had broken down? The evidence from Latrice Gray testified that Mr. Sherman wanted a concurrent deal with the supervised release and the new charges. He was not pleased. He had been attempting to work. Randy Harness testified from the DEA that he was not cooperating, that wasn't taking place, and Latrice Gray also testified that she told him we might as well go to a hearing because you're not getting the offer that you want. Counsel, is the nexus element dependent only upon the revocation hearing or is it also relevant to potential additional drug distribution charges? To also the charges, Your Honor. Could you address the Arthur Anderson case talks about the fact that it's not just a proceeding that is addressed, but any foreseeable proceeding. And when you look at the case law on that fact from Anderson and Tyler, it does talk about that issue that it doesn't have to be initially set in play. It has to be just a foreseeable official proceeding and the revocation. Foreseeable by whom? Well, in this case. The reason I asked the question is it up to the defendants? Is it what they know or is it? In this case, I believe it's foreseeable by both parties, by both the Sherman but also the United States because that's the whole point of the negotiations is he is going to be charged. Mr. Sherman was advised you are going to be charged, and Latrice Gray testified, with the drug charges and that was the breakdown because of the revocation hearing between that and the two years that he would get to that and if he could get a concurrent sentence or seven years, it was foreseeable by both parties in this case. As to whether or not Susan Cooper would be called a testifier was necessary to testify. I can think of a lot of evidentiary barriers that would be in play if Susan Cooper wasn't there for either hearing, especially a foreseeable trial occurring. Eddie Keithley was there, but he was not hand-to-hand there with Mr. Sherman. Mr. Sherman did not hand the methamphetamine to Eddie Keithley. He observed from a distance. Any time you are using a confidential informant, there are all kinds of credibility issues. There are problems. You have to establish a chain of evidence. There are circumstances for which Susan Cooper would be a necessary witness. Could the United States potentially proceed in both out her? Possibly, but it would not be the best evidence and I would not want to be in a situation having to go forward with a witness who was unavailable. Well, in fact, that's what occurred, isn't it? Well, it occurred in the detention hearing and then he ultimately pled guilty. But at these trials, there were meth distribution convictions, weren't there? Well, he had pled guilty to the meth distribution convictions from the previous incident with Susan Cooper. But that happened several years later. It didn't happen then. It happened in 2018, actually, when he pled guilty. After, he had actually, Exhibit 13 is a pretty important piece of evidence to show his state of mind where 13 and 13.1 show a phone call where Sam Sherman is saying, gee, I wonder if they can convict me or they can go We have that recording that was introduced into evidence in the case. So, that showed Mr. Sherman's state of mind knowing that Susan Cooper was a relevant and important and essential witness in an official proceeding. As to Don Smith and his intent and his knowledge, that comes from the Smith-only information. Multiple witnesses did say that he knew that she was a snitch, said that he that she would testify. Paris Davis testified that she could bring him and his bros down or his family down. And Jimmy Porter testified, who was not a very sophisticated witness, but Jimmy Porter actually said, which is not his standard language, he was going to testify against, she was going to testify against my uncle. She was a snitch, but she was going to testify against my uncle. And that's important to show that Don Smith also knew that she was an essential witness and would be a potential witness to an official proceeding. As to the severance issue by Sam Sherman, as I mentioned, 30 witnesses, 11 days, hundreds of exhibits, thousands of documents, and there were actually I would suggest two witnesses who linked or suggested anything about Sam Sherman. Paris Davis did mention briefly that it was, in fact, for his family or that someone was going to be in trouble and that she was a snitch. Also, Jimmy Porter did mention that. And James Frazier said initially that it was for Sherman, but then on cross-examination, Mr. Sherman's counsel got him to concede that I just kind of put those two together. He didn't say specifically. But none of those three ever, as the court mentioned with the Bruton issue, ever stated we are conspiring, we are doing this, he is involved in this offense. It was all I'm doing it for him or I'm doing it for my family or my uncle. That sure gets close though, doesn't it? It is close, but it's close because of the other evidence, I think. I mean, you take that, when you're thinking about the entire trial and all the evidence and the motive, I'm not going to say that the jury potentially might see the innuendo or the suggestion. I agree. But Judge Marshall was adamant with his instructions, like every instruction, this is Smith only. And he did well in his instructions, but it was really only a limited amount of testimony. It was two or three phrases throughout the entire trial. Was it highlighted in closing? It was highlighted as to Smith's guilt. But I think by the time of closing it had been belabored to the jury, understand, compartmentalize where this evidence applies to which defendant. Counsel, do the appellants have to present evidence of the jury's inability to compartmentalize or at some point can the court determine that it's just unreasonable to assume that they could? Well, I think the case law says we assume that juries follow their instructions. I would hate to be in a situation where we are questioning every jury instruction and that the juries follow the standard of proof. Any evidence or issue, any ruling, any of the instructions that are given to the jury to suggest that they're not following these instructions. I think that's a difficult task for the defense to actually overcome that, but for a court to, in fact, assume that the jury did not follow the instructions as well. Counsel, I'd like to ask you a question about the drug conspiracy. Sherman was taken out of that count before it went to the jury. So your theory kind of shifted a bit. And can you tell me as precisely as you can, what is that conspiracy as you see it now? What could the jury have concluded based on the evidence presented on the conspiracy involving Smith and someone else, at least one other person? Well, from the beginning of the trial, our position was that Rachel Cooper was involved. She testified, she pled guilty to hit and apprehension in state court of 25 years. She had initially been charged with murder as well. She testified that she was involved with Don Smith in the distribution of narcotics several times. So can we kind of drill down on that evidence a little bit? Because I didn't see testimony from her about quantity or frequency. Did she ever testify about how much she purchased from Mr. Smith? I don't recall a specific amount being testified. Interestingly, when they went to the abandoned house, that was different because she typically picked up her methamphetamine at Don's house. And I understand that testimony. I guess there still has to be an agreement between Smith and someone else. And here you're saying it's Rachel Cooper. And I understand that we can make inferences on agreements that they're not written and they're not necessarily spoken out loud. But what is your best evidence that Smith was in an agreement with Rachel Cooper to distribute drugs and that he sort of had an understanding of what she was doing with drugs afterwards? I don't see anything as to, you see what Smith was, I'm sorry, what Cooper was doing. I just don't see the evidence. I'm struggling to see the Smith's understanding of that agreement, the knowledge that you have to have in entering a conspiracy with someone else. I feel like there was evidence that they had a long-time drug relationship, for one thing. And we had to be careful with that. But it was established background evidence they had a long-time drug relationship. There was evidence that Rachel Cooper was, as soon as Don Smith left Batesville, he contacts Rachel Cooper. And the fact to me that she actually set up Susan Cooper to go to meet Don Smith to exchange narcotics and drugs, that certainly shows that Rachel Cooper was, in her testimony, setting up a methamphetamine distribution between Susan and Don Smith, for one thing. That's sufficient evidence, I believe, to show that there was a conspiracy between Don and Rachel, but also her testimony that she had been over there multiple times to his home to buy methamphetamine, and that Scott Powell said that Rachel Cooper supplied him with methamphetamine that was in conjunction with Don The parties agree that that's the count upon which count five relies for the use of the firearm? Okay. Yes. So it has to be during and in relation to a drug conspiracy. And this is where I'm struggling. What does that mean when it looks like the drug deal is a setup to actually kill someone? Is that during and in relation to a drug conspiracy? I think the government's theory originally was it was the conspiracy between Smith and Sherman used the gun to protect that conspiracy. What happens when that's not the related in any way? How those two things related now? The conspiracy between Rachel Cooper and Smith, and then the use of the gun to kill someone to protect a conspiracy between Smith and Sherman. I think that it's both the murder and the drug conspiracy. There was testimony from Paris Davis that he was involved with narcotics as well. But Rachel Cooper testified that they did have this drug involvement, Don Smith and she did. And there was also testimony and it was from Don Smith's words that I may be in trouble as well, my family. The conspiracy is that Don and Sam and Rachel were all in this drug conspiracy working together. I know that Sam's was... Well, and that's a good, I mean, it's an entry point for a question I have, which is can you even consider Sam Sherman now as you're looking at it? Because the jury didn't have that. Right, right. But they had the proof of Don's drug use and distribution in the Malvern area. They had the proof from Rachel Cooper and Jimmy Porter and Tammy Costa and other people who testified about his distribution. And Rachel, between the phone calls and the text messages between Don and Rachel, it was more than even through Don and Sam, I believe. There were so many communications between the two throughout the days before, the night of, and afterwards. In fact, that shows that they were also in a way protecting their conspiracy. Okay. So that's your theory. I mean, your theory is that the murder of Susan Cooper was related to both your theory of a conspiracy between Smith and Sherman, which didn't make it to the jury, but also it's related to a conspiracy between Smith and Rachel Cooper. I think that Rachel Cooper is an unindicted co-conspirator in the drug conspiracy. Even though your theory on count one and two is that he was, she was murdered to prevent the testimony against someone who's not in that circle. Okay. And that's the, I guess that's my bottom line question. Can that conviction be affirmed by looking at Sherman, even though he was eliminated from consideration by the jury, at least in the count three? As to Don. Right. As to count three and count five. Yes. You believe you can. And why is that? Judge, I don't have any authority. I'm infirmly to believe that. I'm just saying I believe that I can, and I think it would be appropriate. I don't have a case of quote that. I appreciate you're talking that through with me. It's something I'm trying to, once Mr. Sherman was taken out of a couple of the key counts, it sort of jumbles up the players and what the basis for the conviction were, at least in my mind. And I think in closing, we did state to the jury, Rachel Cooper's involved. She's involved, and I would suggest she was involved in the drug conspiracy, but also un-indictedly involved in the murder conspiracy as well. Unless there are any other questions, I will cede the rest of my time. Thank you. Mr. Hendricks, we'll give you a minute. Thank you, Your Honor. Just a few quick key points on the breakdown of the plea negotiations the AUSA testified explicitly that it was quote incredibly unlikely that the case would go to trial. To me, it was a foregone conclusion. Was Susan Cooper a necessary witness? I suggest to you not. The best analogy is what happened is that the way that the drug transactions were recorded, it was essentially like killing a witness in the middle of a stadium in front of 50,000 people. You don't need Susan Cooper's testimony. The drug conspiracy, it seems that the meth hydrocodone transaction is separate and distinct from the drug conspiracy charged in count three, upon which count five relies. Conceitedly, Cooper said, I bought and sold drugs, didn't say how much. I can't remember if she said when. The next level of problem I have, that goes into the Jason Frazier problem, that testimony of did you deal drugs with Don? Yes. Did you deal drugs with Sherman? Yeah. Did you work with both Don and Sherman? That to me was inadmissible evidence that infects the quality of proof on counts three and on count five, which count three depends. Barring any further questions, that will conclude my presentation. Thank you, Mr. Hendricks. Mr. Rosenzweig, would you like a minute too? Very briefly, the court clearly has recognized the innuendo that goes through all the Smith-only material, particularly in the context of this case. Again, we recognize that severance is difficult under the law, but this, with the different levels of culpability, clearly, because there's no allegation that Sherman was even around at the time of the killing, and the number of different witnesses who quote Smith, that this is the type of case that Zafiro, among other cases, does not close the door on severance, because that case recognizes that limiting instructions oftentimes or sometimes cannot work. Thank you. Very well. The court appreciates all counsel's appearance and arguments today. Case is submitted and we'll issue an opinion in due course. Thank you, Your Honor. You're welcome. Ms. Rudolph, would you announce our second case for argument?